**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ANGELA CHAMPION,

        Plaintiff,

v.                                                Case No. 3:18-cv-1487-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

        Defendant.

## OPINION AND ORDER[2]

### I. Status

Angela Champion ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of "Anxiety," "Depression," "Hypertension," "Bad Left Knee," and "Severe Pain." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed February 14, 2019, at 101, 113, 227. Plaintiff filed an application for DIB on June 25, 2015,[3] alleging a disability

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed February 14, 2019; Reference Order (Doc. No. 13), entered February 19, 2019.

[3] Although actually completed on June 25, 2015, see Tr. at 203, the application is dated October 23, 2015, see Tr. at 203. Also, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as June 24, 2015, see, e.g., Tr. at 101, 113.

onset date of May 1, 2014. Tr. at 203-06. The alleged disability onset date was later amended to January 10, 2015. Tr. at 46, 222. The application was denied initially, Tr. at 101-11, 112, 129, 130-32, and upon reconsideration, Tr. at 113-25, 126, 134, 135-39.

On January 31, 2018, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 43-100. At the time of the hearing, Plaintiff was fifty-three (53) years old. Tr. at 47. The ALJ issued a Decision on February 26, 2018, finding Plaintiff not disabled through the date of the Decision. Tr. at 10-23.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. Tr. at 197-98 (request for review), 199-202 (memorandum in support); see Tr. at 4-5 (appeals council exhibit lists), 37 (duplicate). On October 18, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, 34-36 (duplicate), thereby making the ALJ's Decision the final decision of the Commissioner. On December 17, 2018, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises two issues: 1) whether the ALJ erred in rejecting the opinion of Peter Knox, M.Ed., Psy.D., a consultative psychologist; and 2) whether the ALJ erred at step five of the sequential inquiry by failing to resolve an apparent conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT") and by finding Plaintiff can perform a job that exceeds the parameters of the hypothetical that the ALJ posed to the VE. Plaintiff's Memorandum of Law (Doc. No. 15; "Pl.'s Mem."), filed April 15, 2019, at 1, 13-17, 17-24. On June 14, 2019, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Def.'s Mem.")

addressing the issues raised by Plaintiff. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 12-23. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since January 10, 2015, the alleged onset date." Tr. at 12 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: history of social anxiety disorder, history of a major depressive disorder (mild), history of morbid obesity, history of medical and medication noncompliance." Tr. at 12 (emphasis and

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 13 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform less than the full range of medium work as defined in 20 CFR [§] 404.1567(c). During the course of an 8-hour workday, with reasonable and customary breaks, [Plaintiff] can sit, stand and/or walk for at least 6 hours each. [Plaintiff] can lift 50 pounds occasionally and up to 25 pounds or less more frequently. [Plaintiff] can frequently use her upper and lower extremities for the push/pull operation of arm, hand or foot/pedal controls. [Plaintiff] can climb ramps and/or stairs occasionally, but never climb ladders, ropes or scaffolds. All other postural activities can [be] performed at least occasionally. [Plaintiff] has no limitation of functioning with regard to the use of her upper extremities, within the weight limits denoted, for reaching in all directions, handling fingering and feeling. There are no limitation[s] of functioning with regard to [Plaintiff's] ability to see, speak and hear. [Plaintiff] cannot work at unprotected heights, around dangerous moving machinery or in proximity to concentrated industrial vibration.
>
> Mentally, [Plaintiff] can perform simple, rote and repetitive tasks in a well-structured work environment, where the job duties do not change from one day to the next. [Plaintiff] can have occasional interaction with the co-workers, supervisors and the general public. [Plaintiff] cannot work in jobs that have a strict production goal or quota. [Plaintiff] would work better with things and not people.

Tr. at 15-16 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as "a Home Health Aide." Tr. at 21 (some emphasis and citation omitted). At step five, after considering Plaintiff's age ("50 years old . . . on the alleged disability onset date"), education ("limited"), work experience, and RFC, the ALJ

relied on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 21 (emphasis and citation omitted), such as "Hand Packager," "Laundry Worker," "Labeler," and "Night Cleaner," Tr. at 22. The ALJ concluded that Plaintiff was not "under a disability . . . from January 10, 2015, through the date of th[e D]ecision." Tr. at 22 (emphasis and citation omitted).

### **III. Standard of Review**

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

**IV. Discussion**

As noted above, Plaintiff raises two issues. They are addressed in turn.

**A. Opinion of Consultative Psychologist, Dr. Knox**

**1. Applicable Law**[5]

The Regulations establish a hierarchy among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. §§ 404.1527, 416.927. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5)

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed her claim before that date, the undersigned cites the rules and Regulations that were in effect on the date the claim was filed, unless otherwise noted.

[6] "Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"); 20 C.F.R. § 404.1513(a).

- 6 -

"[s]pecialization." 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(f), 416.927(f); see also McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

### 2. Discussion

Dr. Knox, a consultative psychologist, performed a one-time mental status examination of Plaintiff on January 10, 2018. Tr. at 408. Following the examination, he authored a report, Tr. at 408-13, and filled out a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)" form, Tr. at 414-16. Relevant here, Dr. Knox opined that Plaintiff would have marked limitations in her ability to interact appropriately with the public, with supervisors, with co-workers, and in her ability to respond appropriately to

usual work situations and to changes in a routine work setting. Tr. at 415. The ALJ gave "little weight" to Dr. Knox's opinion regarding Plaintiff's functional limitations. Tr. at 19.

The ALJ provided the following reasons for assigning "little weight" to Dr. Knox's opinion regarding Plaintiff's limitations: 1) the opinion "was not supported by the other evidence" and 2) the opinion was not supported by Plaintiff's "inconsistent hearing testimony, which clearly showed that [Plaintiff] had not followed her prescribed mental health treatment or [taken] her medications as prescribed and she could not offer any valid reason for her conduct." Tr. at 19. The ALJ then went on to discuss that Plaintiff's "symptoms were reported as 'stable' with her prescribed treatment," that Plaintiff "was assessed GAF scores between 60-65," and that "the longitudinal record from [Plaintiff's provider] reflects that [Plaintiff] reported being able to perform activities of daily living and keeping her self occupied taking care of her grandchildren and doing household chores." Tr. at 20. The ALJ also discussed Plaintiff's "inconsistent" testimony regarding why she was not always compliant with her medications. Tr. at 20.

Plaintiff contends the ALJ improperly rejected Dr. Knox's opinion because the reasons provided by the ALJ are not supported by the record. Pl.'s Mem. at 13-17. Responding, Defendant argues the ALJ properly considered and weighed Dr. Knox's opinion. Def.'s Mem. at 4-11.

The ALJ's reasons for assigning little weight to the limitations provided by Dr. Knox are supported by substantial evidence. To begin, although Plaintiff characterizes the ALJ's assignment as "rejecting" Dr. Knox's opinion, at most, the ALJ rejected the aspect opining Plaintiff has <u>marked</u> limitations in interacting appropriately with the public, supervisors, and co-workers and responding appropriately to usual work situations and to

changes in a routine work setting. Compare Tr. at 16, 19 (ALJ's Decision), with Tr. at 415 (Dr. Knox's opinion). Instead, the ALJ provided in the RFC that Plaintiff "can have occasional interaction with the co-workers, supervisors, and the general public," Plaintiff "would work better with things and not people," and Plaintiff needs an environment "where the job duties do not change from one day to the next." Tr. at 16 (emphasis added).

And, the ALJ's reasons for rejecting that aspect of Dr. Knox's opinion find support in the record. First, Plaintiff was equivocal and inconsistent when pressed by the ALJ at the hearing regarding the reasons for her medication non-compliance. See Tr. at 68-88. Second, the treatment notes from her Mental Heath Resource Center reflect, on numerous occasions, that when taking prescribed medications Plaintiff reported doing "well," "fine," or "OK" and not feeling "depressed or anxious." Tr. at 426, 428, 430, 432, 434, 442; but see Tr. at 436 (Plaintiff reported doing "alright, although she has been experiencing feeling anxious off and on, especially in public and around people") (internal quotation omitted), 444 (Plaintiff's "anxiety [was] up and down" and sometimes caused "nausea and vomiting").[7] Even on one of the occasions when Plaintiff admitted to being off her antidepressant, she "denie[d] feeling depressed or anxious." Tr. at 438; but see Tr. at 440 (when Plaintiff was not taking one of the medications consistently, she "denie[d] feeling depressed but at times still [got] anxious"), 446 (after missing two appointments and being out of medication for a couple of months, Plaintiff was "not doing very well" and her "anxiety continue[d] to go up"). Later notes document Plaintiff was "in remission and stable on her medications without side effects." Tr. at 426, 428, 430, 432. Tellingly, the last note in

---

[7] Duplicates of certain of the Mental Heath Resource Center treatment notes are located in the administrative transcript at pages 312-23.

the administrative transcript from the Mental Health Resource Center, dated December 19, 2017, documents that "compared to her last visit, [Plaintiff] has shown some decline due to noncompliance with treatment and has experienced depression which comes and goes." Tr. at 424. Third, Plaintiff had numerous missed appointments: she missed two in late 2015 or early 2016 due to a reported lack of "gas money," two others in a row in May 2016 for unspecified reasons, and finally two appointments just predating the December 19, 2017 appointment, in November 2017, because of reported "transportation problems" and "a virus." Tr. at 424, 438, 446. Fourth, although perhaps not directly related to the ability to interact with others in a job environment, Plaintiff consistently reported being able to do household chores, perform activities of daily living, and take care of grandchildren. See Tr. at 424, 426, 428, 430, 432, 434, 436, 438, 440, 442.

In sum, the ALJ's reasons for rejecting a portion of Dr. Knox's opinion are supported by substantial evidence and need not be disturbed.

## B. Step Five Findings

### 1. Applicable Law

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239. To make this determination, the ALJ may pose a hypothetical question to a VE. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)); see also Zimmer v. Comm'r of Soc. Sec., 211 F. App'x 819, 820 (11th Cir. 2006) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999) ("An ALJ relies on the testimony of a [VE] to determine what level of skill the claimant achieved in his [or her] past work, whether the claimant has

transferable skills, and whether the claimant can perform other jobs.")). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones, 190 F.3d at 1229). If there are "apparent conflicts" between a VE's testimony and the DOT, the ALJ must identify them, "ask the VE about them, and explain how the conflict was resolved in the ALJ's . . . [D]ecision." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1365 (11th Cir. 2018).

The ALJ is required to "articulate specific jobs" that exist in the national economy "that the claimant can perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted), In this determination, "the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x 931, 934 (11th Cir. 2015) (quoting Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987)). Indeed, it does not matter "whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

"[W]ork exists in the national economy when it exists either in significant numbers in the region where [the claimant] work[s] or in several other regions of the country." 20 C.F.R. § 404.1566(a); see also 42 U.S.C. § 1382c(a)(3)(B). There is, moreover, no bright line rule as to what constitutes a "significant number" of positions in this context, and the United States Court of Appeals for the Eleventh Circuit recently acknowledged that it "has never held that a minimum numerical count of jobs must be identified in order to constitute

work that 'exists in significant numbers' under the statute and regulations." Atha, 616 F. App'x at 934.

**2. Discussion**

As stated previously, the ALJ found at step five that Plaintiff is capable of performing four different jobs that exist in significant numbers in the national economy. See Tr. at 22. Plaintiff challenges the ALJ's findings with respect to the first three jobs—Hand Packager, Laundry Worker, and Labeler—because the DOT assigns these jobs a reasoning level of 2 which, according to Plaintiff, is inconsistent with the ALJ's finding that Plaintiff may only perform "simple, rote and repetitive tasks." Tr. at 16; see Pl.'s Mem. at 18-23. As to the fourth job, Night Cleaner, Plaintiff states that it exceeds the parameters of the hypothetical that was presented to the VE so, like the other jobs, it cannot constitute substantial evidence at step five. Pl.'s Mem. at 23-25. Defendant responds that the Court need not decide Plaintiff's first challenge because the ALJ's finding that Plaintiff can perform the job of Night Cleaner, which has a reasoning level of 1, constitutes substantial evidence at step five. Def.'s Mem. at 11-14. Alternatively, Defendant argues there is no apparent conflict between the reasoning level of the other jobs and the DOT, so the ALJ did not err. Id. at 14-19. As to the contention that the Night Cleaner job exceeds the parameters of the hypothetical to the VE, Defendant argues that when the VE's testimony is read as a "whole," it is clear that the job does not exceed the hypothetical. Id. at 13-14.

The undersigned agrees with Defendant that Plaintiff's first contention—about reasoning level 2 assigned by the DOT for the first three jobs being inconsistent with the ALJ's finding of "simple, rote and repetitive tasks"—need not be decided. First, Plaintiff does not challenge the fourth job (Night Cleaner) in this regard, and a review of the DOT

as to the Night Cleaner job shows that it indeed carries a reasoning level of 1. See DOT, 1991 WL 672783, 323.687-014 ("Reasoning: Level 1- apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."). Thus, if the Night Cleaner job carries sufficient positions available in the national economy, it alone is enough upon which the ALJ's step five findings could be upheld. The VE testified, and the ALJ memorialized in the Decision, that there are 212,000 Night Cleaner jobs available in the national economy. Tr. at 22, 95. That is a sufficient amount of available jobs. See, e.g., Atha, 616 F. App'x at 935 (upholding the ALJ's determination that 440 jobs in Alabama and 23,800 jobs nationally constituted a significant number).

Plaintiff contends that the "Night Cleaner" job exceeded the hypothetical to the VE because "the VE acknowledged that the job . . . would involve 'multiple scenarios' and potentially 'countless' variables," so, according to Plaintiff, "that job cannot be said to be rote or repetitive." Pl.'s Mem. at 24 (quoting Tr. at 98). But when the VE made those acknowledgements, the VE was just responding to Plaintiff's counsel's cross examination regarding whether a person performing that job would have to clean "a spill or a break or something that you may have to do that is outside of your typical work duties of mopping a floor." Tr. at 98. The VE was simply trying to get across that anyone performing any job could encounter a variation in duties in an abnormal situation; this does not render unsupported the VE's testimony that a Night Cleaner fits within the parameters of the hypothetical. In sum, the ALJ's reliance on the VE's testimony at step five, at least as to the matters addressed by the undersigned, was not error. Substantial evidence supports the step five findings.

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 23, 2020.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record